**HEWES & POTTER, Inc., v. MEYERSON et al.**

District Court, S. D. New York.
July 23, 1931.

See, also, 36 F.(2d) 1001.

Charles F. Perkins, of Boston, Mass., and Alexander C. Neave, of New York City, for plaintiff.

Mock & Blum, of New York City (Asher Blum, of New York City, and George E. Mueller, of Chicago, Ill., of counsel), for defendants.

COXE, District Judge.

■ This in an infringement suit involving the Hewes patent, No. 1,419,137, issued June 13, 1922, for improvements in men's neckwear, consisting of a ready-made bow necktie with a pliable wire skeleton frame internally supporting the fabric. The patent was originally issued to Hewes & Potter, a copartnership, as assignee of the inventor, and is now owned by the plaintiff corporation.

The patent was sustained in 1926 by Judge Thomas in the Connecticut District,

in Hewes v. Gay (D. C.) 11 F.(2d) 165, but was invalidated on substantially the same showing in 1928 by the Circuit Court of Appeals for the Seventh Circuit in Hewes v. S. Deiches & Co., 24 F.(2d) 503, 504, to which latter decision certiorari was denied by the Supreme Court on October 8, 1928. Hewes v. S. Deiches & Co., 278 U. S. 601, 49 S. Ct. 9, 73 L. Ed. 529. The case is now presented a third time with little change in the facts, and I am in effect asked to choose between the Connecticut decision and the decision in the Seventh circuit; and, inasmuch as I concur in the result and most of the reasoning of Judge Thomas' opinion, I do not deem it necessary to do more than state my own general conclusions on the issue of patentability.

1. There is nothing in the prior art showing the use of a frame of pliable metal, or a skeleton frame of pliable wire, in a bow necktie to make the tie readily bendable or moldable to a variety of shapes at the will of the wearer. The Peterson patent, No. 733,871, discloses a "fastener," composed of "a single piece of wire," with a loop "to receive the shank of a collar button." It in no way suggests the idea of a pliable wire or metal insert to make the tie moldable. The same may also be said of the Deshane patent, No. 1,340,755, which discloses a bow tie with a rigid wire frame secured externally to its back. These two patents were the only ones cited against the patent by the Patent Office, and the patent issued over them.

2. The remaining patents cited by the defendants are not only remote, but have none of the essential characteristics of the patent in suit. The Manheimer and Schultz patents, Nos. 1,024,517 and 1,067,447, relate to ladies' shoe bows, and disclose stiffeners or formers of light wire or plastic sheet metal. These bows are, however, entirely different in structure from the Hewes bow tie, and there is nothing in either patent to suggest the moldable feature of the patent in suit. I am inclined to think, therefore, that the Circuit Court of Appeals for the Seventh Circuit placed undue emphasis on both patents in its decision holding the patent void for lack of invention. The Schloerb patent, No. 1,227,677, bears no resemblance to the patent in suit; it shows merely a pliable clasp to hold a four-in-hand tie in a desired position. And the Rosenfield patent, No. 1,-186,838, has no particular significance except to disclose the use of wire tape to support an open loop or plume in the hat-trim-ming art. The remaining patents have no bearing on the issue presented.

3. The prior publications, cited by the defendants, consisting of pamphlets entitled "Practical Home Millinery," "The Art of Millinery," and "A Complete Course in Millinery," add little to the patented art already discussed. They show various methods of inserting pliable wires as stiffeners in bows or loops in the millinery art; but aside from such general teaching they are of no help in determining whether or not it was invention to produce the Hewes tie. These publications were not part of the record in the Connecticut case, but were relied on in the decision in the Seventh circuit, where it was stated in the opinion that "they told the reader how to use wire skeletons to shape and hold the shape of bows of various makes." That may well be, but I do not think they helped materially to solve the difficulties confronting Hewes in his efforts to produce a commercially possible, moldable, ready-made bow tie which would not have the faults or the defects of the prior art. "The skilled mechanic might study them till doomsday and he would not think of it"; that is, the Hewes tie. Mack v. Spencer Optical Mfg. Co. (C. C.) 52 F. 819, 821.

4. The specification stated that "the fabric of the wing extends materially beyond the outline of the wire skeleton frame of the bow," and, although claims 1 and 2 make no specific claim to that particular feature, I am satisfied that this is the obvious meaning of the words "being readily bendable to impart a variety of shapes to the tie," appearing in the claims. I am clear also that under the authorities claim 3 cannot be held indefinite because of the characterization of the skeleton frame as "substantially smaller" than the outlines of the bow. Eibel Process Co. v. Paper Co., 261 U. S. 45, 65, 43 S. Ct. 322, 67 L. Ed. 523; Franc-Strohmenger & Cowan v. Arthur Siegman (D. C.) 25 F. (2d) 108, affirmed (C. C. A.) 27 F.(2d) 785, 786.

5. The bow tie of the patent in suit has enjoyed a conspicuous commercial success, and has completely supplanted the ready-made ties of the prior art; and, while commercial success is in no way a substitute for invention, still it is "a powerful piece of evidence" in a doubtful case. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277; Minerals Separation v. Hyde, 242 U. S. 261, 37 S. Ct. 82, 61 L. Ed. 286; Franc-Strohmenger & Cowan v. Arthur Siegman (D. C.) 25 F.(2d) 108. Neither is the commercial

success in the present case fairly attributable to the extensive advertising and aggressive sales methods employed by the plaintiff. Undoubtedly these contributed to the result, but they were necessary to protect the patent, and are the natural concomitants of every meritorious invention.

6. The fact that Deiches himself applied, on November 20, 1922, or almost immediately after the issuance of the patent in suit, for patent No. 1,481,539, covering a bow tie in all respects substantially the same as that of the patent in suit, is mute testimony of the high character of the invention.

I, therefore, hold that all three claims of the patent are valid, and that they are entitled to a range sufficient to include the ties manufactured and sold by the defendant Meyerson, and embodying the insert of the Deiches patent, No. 1,481,539.

There remain only the defenses of estoppel and failure to disclaim, urged by both defendants. Originally the present suit was brought against Meyerson, as the sole defendant; and, after Meyerson had answered, S. Deiches & Co., a corporation, petitioned for, and was granted, leave to intervene as a party defendant. Hewes & Potter v. Meyerson (D. C.) 36 F.(2d) 1001. The ground of the application for intervention was that Meyerson had purchased his inserts from one Pithouse, who was a licensee of S. Deiches & Co.; and it was insisted, therefore, that Meyerson was entitled to immunity from prosecution in the present suit. The argument appears to be that, because S. Deiches & Co. was successful in the Chicago litigation, any one who used the Deiches insert in the manufacture of a bow tie should be accorded immunity under the authority of Kessler v. Eldred, 206 U. S. 285, 27 S. Ct. 611, 51 L. Ed. 1065. The difficulty with this contention, however, is that the Hewes patent covers a bow tie, of which one element in the combination is the pliable wire or metal frame, and Pithouse, the licensee of S. Deiches & Co., manufactures and sells only the Deiches insert, leaving it to Meyerson to incorporate the insert in the completed bow tie produced by him. Undoubtedly the bow ties manufactured and sold by S. Deiches & Co. are entitled to immunity under the Kessler decision; but this immunity does not extend to Meyerson, who himself manufactures and sells the patented bows, after purchasing the Deiches inserts from Pithouse. Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co., 232 U. S. 413, 34 S. Ct. 403, 58 L. Ed. 663; Woodward Co. v. Hurd, 232 U. S. 428, 34 S. Ct. 409, 58 L. Ed 670. I am inclined to think, therefore, that S. Deiches & Co. has no proper place as a defendant in the present suit, and that the defense of estoppel, interposed by both defendants, must necessarily fail. Wenborne-Karpen Dryer Co. v. Dort Motor Car Co. (C. C. A.) 14 F.(2d) 378.

The defendants further insist that the present suit should be dismissed because of the failure of the patentee to disclaim after the unfavorable decision in the Chicago litigation, and cite the recent Supreme Court decision in Ensten v. Simon, Ascher & Co., 282 U. S. 445, 51 S. Ct. 207, 75 L. Ed. 453, in support of their contention. It is not, however, satisfactorily explained how a patentee can disclaim where his entire patent has been declared invalid by a Circuit Court of Appeals in one circuit and sustained in another circuit, and the entire purpose and history of the disclaimer statute indicates that it was never intended that it should apply to such a situation.

The plaintiff may have a decree declaring all three claims of the patent valid and infringed, with costs against both defendants.