682

**ACCO PRODUCTS, Inc., v. WILSON–JONES CO.**

No. 4416.

District Court, D. Massachusetts.

March 17, 1938.

John V. Spalding, of Boston, Mass., for plaintiff.

Fish, Richardson & Neave and Hector M. Holmes, all of Boston, Mass., and Benjamin Schlosser, of Chicago, Ill., for defendant.

McLELLAN, District Judge.

This is a suit for the infringement of two patents, Reissue No. 14,974 to Grant, and patent No. 1,658,052 to Kline. It is agreed that the plaintiff is and since March 16, 1931, has been the sole and exclusive owner of both patents and of all rights thereunder. The defenses are anticipation, noninvention, noninfringement, and laches. The plaintiff is a New York corporation, having its principal place of business at Long Island City, N. Y. The defendant is a Massachusetts corporation.

Throughout this opinion statements of fact may be taken as findings of fact, and statements of law as conclusions of law, in accordance with Equity Rule 70½, 28 U.S.C.A. following section 723.

Both patents relate to alleged improvements in paper fasteners. The reissue patent to Grant expired during the pendency of this suit, and as to it, the plaintiff seeks only an accounting. As to the Kline patent, the plaintiff seeks both an injunction and an accounting. It is stipulated that the defendant, subsequent to March 16, 1931, sold certain paper fasteners of the types introduced in evidence by the plaintiff and discussed infra as "the defendant's fasteners."

Grant Reissue No. 14,974.

This patent is a reissue of patent No. 1,337,598, dated April 20, 1920, and issued on an application filed September 26, 1916. The reissue was granted to James W. Grant, of Bridgeport, Conn., assignor to Fred J. Klein, of Long Island City, N. Y. The patent covers alleged improvements in paper fasteners, designed to fasten together letters, documents, and the like. It shows a three-piece fastener comprising a metal base and two tongue members, so called. When the two identical tongues are united with the base, in the manner hereafter described, they project at right angles thereto. The fastener is then ready to use. The user punches two holes in a group of papers. He then puts the tongues through the holes down to the base, and bends over the protruding portions of the tongues, thus holding the papers in place. The base member consists of a strip of metal, strengthened by two longitudinal parallel ridges spaced

by about the width of the tongue members, the ridges thus forming a groove between them into which the tongue members may be fitted. Across these ridges at each end of the base is a transverse bar or band forming a sort of bridge. This bridge of metal is like the fixed loop of leather on a bridle into which, after buckling the throat latch, the end of the strap is tucked in order to prevent its flapping. Such fixed loops of leather are also found below the buckle in trunk straps. In assembling the fastener, a tongue is inserted in the groove between the ridges, and under the transverse bar or bridge. In order to prevent the tongue from slipping outwardly after it has been placed in its proper position, it is held against the bridge by means of lugs. These lugs are formed by a semicircular punch in and through the tongue at the proper place. Until the tongue is in its proper position, the lugs remain flat, just as does the top of a can after the can opener has been run partly around the circumference of the top. The person opening the can raises the top on the uncut portion as a hinge. The assembler of the paper fastener raises the cut metal by means of a pencil or other similar instrument. When raised, the punched metal is higher than the bar or bridge, thus effectually preventing the tongue from slipping under the bridge. Two variations of the construction are shown. In one, two lugs are provided for each tongue, one on each side of the bar or bridge. The tongue is then bent over the end of the base, until it is at right angles to the base, when it is ready to be inserted in the pile of papers, as described above. In the alternative construction illustrated in the patent, only one lug is used. This is on the inner end of the tongue, and prevents it from sliding outwardly under the bridge. Movement in the opposite direction is prevented by the fact that the tongue is bent over the end of the base.

At the trial, the plaintiff relied upon claims 1 to 6 of this patent, which read as follows:

"1. A three piece paper fastener comprising a base member, and two tongue members, spaced apart, one near each end of the base member, separate therefrom and from each other, each tongue member positively secured near its own end to the respective end portion of the base member, and alined by one of its side edges with an alining edge on the base member.

"2. A three piece paper fastener comprising a base member, and two separate tongue members, spaced apart and positively secured to the base member, one near each end, each end portion of said base member embodying two edges for alining the tongue member by its two side edges, and each tongue member embodying means to complete the securing and alining of the respective tongue member to the base member.

"3. A paper fastener comprising a base member embodying two transverse bands or bars and two separate tongue members, one fastened to each band or bar.

"4. A paper fastener comprising a base member embodying a band or bar near each end, and two separable tongue members, separate from each other, one for each end of the base, each tongue member having means for securing it to one of said bands or bars.

"5. A paper fastener comprising a base embodying two transverse bars one near each end, and two tongues separate from each other, spaced apart, one near each end of the base, one end of each tongue positively secured to and interlocking with the respective bar of the base.

"6. A paper fastener comprising a base embodying an integral transverse bar near each end, and two tongues on said base separate from each other, spaced apart, one near each end of the base, each secured to one of said bars by lugs on the respective tongues."

The use of a three-piece fastener of this type has certain advantages for the trade. By carrying seven different sizes of base member, and six different sizes of tongues, the dealer is able to supply forty-two different sizes of fastener. The number of dies needed by the manufacturer is similarly reduced. But the idea of the three-piece fastener was not original with the plaintiff. In the following patents, adduced by the defendant, variations of the three-piece fastener idea appear: Williams, United States No. 274,429; Adler, United States No. 882,284; Learoyd, British No. 29,850 of 1896; and Thomann, British No. 16,480 of 1900.

The plaintiff contends, however, that it is entitled to the patent in suit for the particular construction of the three-piece fastener disclosed therein. The plaintiff's construction, as disclosed in its patent, shows three elements: First, a metal base, strengthened by longitudinal parallel ridges,

which serve as edges to keep the tongues properly alined with the base; second, transverse bars or bridges across these ridges at either end of the base; and, third, the use of lugs on the tongues, which, acting with the ridges and the transverse bars, serve to secure the tongues to the base.

An examination of the patents cited by the defendant shows that none of these features, except the use of lugs, is new as applied to paper fasteners.

The use of transverse bars or bands on a paper fastener for the purpose of securing the tongue member to the base is shown in Learoyd, British No. 29,850 of 1896. The use of edges for the purpose of alining the tongue properly appears clearly in Rittenhouse, United States No. 1,233,912. This patent was not granted until July 17, 1917, almost ten months after the application for the original of the reissue here in suit was filed. The application for the Rittenhouse patent, however, was filed March 10, 1910. As the plaintiff has not attempted to carry its invention back of the time of filing the original application, the Rittenhouse application is pertinent. Alexander Milburn Company v. Davis-Bournonville Company, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Osteen v. Ansco Photoproducts, Inc., 2 Cir., 27 F.2d 688; Lemley v. Dobson-Evans Company, 6 Cir., 243 F. 391. The Rittenhouse patent shows a base and a detachable tongue, forming a two-piece fastener. The base is constructed with a pair of struck up ears at each end, through which the tongue passes. Rittenhouse states as one of the purposes of his invention, "also to provide means for properly guiding the fastening strip into correct alinement with the base member during the operation of its insertion into the base member as will be hereinafter more fully described." The inner edges of the nibs or ears here serve to aline the tongue properly with the base.

The only other feature of the patent in suit is the use of the lugs cut out from the tongue to hold the tongue in position against the transverse bar or bridge. The use of a lug for such a purpose would not only be obvious to a skilled worker in the field, but to almost any one else.

It has been argued also that the device of the defendant does not infringe the plaintiff's, if the latter's patent be regarded as valid. Comparison of the two fasteners shows the danger encountered by the plaintiff. In arguing infringement, the plaintiff incurs the risk of showing anticipation, for that which infringes, if later, anticipates, if earlier. The defendant's base is equipped with longitudinal ridges in the same manner as the plaintiff's. These ridges are used only for strengthening purposes, and are not used for alining the tongue. The tongue in the defendant's device is inserted through a pair of raised nibs or ears, acting in the same way as the nibs or ears shown by Rittenhouse, cited above. The plaintiff says that the sides of these ears act as an alining edge in exactly the same manner as the longitudinal bars shown in its patent. I agree. As pointed out, the same thing is true of the Rittenhouse ears. The plaintiff uses lugs to keep the tongue from sliding under the bar or bridge. The defendant keeps the tongue from sliding through the ears or nibs by widening the tongue at the end so that it is too wide to pass through the ears. The simple way to prevent the end of the tongue from passing through an opening is to enlarge a portion of the tongue. The plaintiff accomplishes this by means of a lug which increases the thickness of the tongue at the point in question. The defendant makes its tongue wider. Both means are obvious. If there be any merit, however, in the alleged invention of such an expedient, it must be said, in fairness to the defendant, that it has adopted a different one.

I find, therefore, as to Grant Reissue No. 14,974: (1) That claims 1 to 6, inclusive, of this patent, are invalid; (2) that if there be any patentable features in the claims in suit, they have not been copied by the defendant.

## Kline Patent No. 1,658,052.

This patent was granted to Fred J. Kline, of Bayville, N. Y., February 7, 1928, upon an application filed February 16, 1927. It describes a top plate, sometimes called a compressor member or a keeper member, to be used with paper fasteners. The object of such a plate is to provide a top through which the tongues of the fastener may pass after going through the file of papers which are to be bound, and onto which the tongues may be bent over and held, to complete the binding. The features of the present keeper member, which it is urged are sufficient to entitle the plaintiff to a patent therefor include a pair of longitudinal ribs or bars, partly for strengthening purposes, but so

spaced as to form a groove into which the ends of the tongues will fit; a pair of sliding locks designed to hold the tongues in these grooves after they have been bent over, and a widening at each end of the keeper member designed to prevent the locks from slipping off the keeper.

The plaintiff relied at the trial upon claims 3 and 6, which read:

"3. A fastener comprising a base having spaced tongues and a keeper with similarly spaced perforations to receive the tongues, longitudinal ribs on the upper face of the keeper extending continuously between the ends thereof but terminating short of the ends and a plurality of locks adapted to overlie the ends of the tongues when the latter are threaded through the perforations and bent into the groove between the ribs, the ends of the locks being bent over the lateral edges of the keeper and the ends of the keeper being flared to retain the locks thereon."

"6. A keeper for fasteners having perforations adjacent its ends, longitudinal ribs extending continuously between the ends but terminating short of the ends and a plurality of locks slidably mounted on the keeper, the ends of the locks being bent over the lateral edges of the keeper and the ends of the keeper being flared to retain the locks thereon."

The idea of using sliding locks to hold down the ends of the tongue of a paper fastener or clamp is old. Some such construction appears in the following patents adduced by the defendant: Bowry, United States No. 507,478; Mez, United States No. 822,147; Clark, United States No. 970,989; Alver, United States No. 1,650,002; Daegel, British No. 1600 of 1903; and in the drawings annexed to Shipman, British No. 8433 of 1886.

The plaintiff contends, however, that its particular construction is such as to entitle it to a patent. Here, as regards the Alver patent, United States No. 1,650,002, it faces somewhat the same difficulty as in the previous patent in suit. The defendant's construction resembles the Alver disclosure more closely than that of the plaintiff. The Alver patent was issued November 22, 1927, upon an application filed April 26, 1923. It is admissible, therefore, in the same way as the Rittenhouse patent discussed earlier in this opinion. See Alexander Milburn Company v. Davis-Bournonville Company, and the other cases cited

supra. Alver shows a keeper member having slits at each end to receive the tongues, just as in the patent in suit. The construction differs in two ways. In Kline, the tongues fit into a groove formed by the longitudinal ridges, and the edges of the keeper rest more or less upon the paper itself. It is along these edges that the locks slide. In Alver, the tongues fit into a depressed channel, so that the lateral edges of the keeper do not fit against the paper. In Kline, the locks are kept from sliding off by flaring the ends of the keeper. In Alver, the same object is accomplished by bumps or protuberances at each end of the keeper. The defendant's keeper resembles Alver's in that it uses the depressed channel, rather than the ridges, in order to form a groove into which the tongue will fit. The use of ridges to form a groove for a tongue is old. The same construction is found in Klein, United States No. 1,067,036. The Klein of this patent is the same person as the Kline of the patent in suit. The only essential difference between the Klein patent and the Kline patent in suit is as to the method of keeping the tongues down. In the former they are tucked under flanges which adjoin the ridge; in the latter they are held in place by sliding locks heretofore described.

It is well settled that a new combination of elements, old in themselves, but which produces a new and useful result, may amount to invention if the combination required more than the ordinary ability of one skilled in the art. Expanded Metal Company v. Bradford, 214 U.S. 366, 29 S.Ct. 652, 53 L.Ed. 1034; Rubber Tire Wheel Company v. Goodyear Tire & Rubber Company, 232 U.S. 413, 34 S.Ct. 403, 58 L.Ed. 663; Diamond Rubber Company v. Consolidated Tire Company, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527. But this is not such a case. Here the combination required nothing more than mechanical skill and involved no exercise of an inventive faculty. See Altoona Theatres v. Tri-Ergon Corporation, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Grinnell Washing Machine Company v. E. E. Johnson Company, 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Hailes v. Van Wormer, 20 Wall. 353, 22 L.Ed. 241.

Claims 3 and 6 of the Kline patent, No. 1,658,052, are invalid, and it seems unnecessary to discuss infringement or laches.

A decree dismissing the bill of complaint is to be entered.