**MGA, INC., Plaintiff-Appellant,**

v.

**GENERAL MOTORS CORPORATION and LaSalle Machine Tool, Inc., Defendants-Appellees.**

No. 87–1015.

United States Court of Appeals, Federal Circuit.

Aug. 13, 1987.

*See Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1439, 221 USPQ 97, 107 (Fed.Cir. 1984).

John R. Benefiel, Birmingham, Mich., argued, for plaintiff-appellant.

Dean L. Ellis, of General Motors Corp., Detroit, Mich., argued, for defendant-appellee General Motors. With him on the brief, was Warren E. Finken, of General Motors Corp., Detroit, Mich.

James E. Stephenson, of Harness, Dickey & Pierce, Ann Arbor, Michigan, argued, for defendant-appellee LaSalle. With him on the brief, was Robert A. Dunn, of Harness, Dickey & Pierce, Birmingham, Mich.

Before BISSELL, Circuit Judge, BALDWIN, Senior Circuit Judge, and ARCHER, Circuit Judge.

BISSELL, Circuit Judge.

MGA, Inc. (MGA) appeals from the judgment of the District Court for the Eastern

District of Michigan, Docket No. 83CV2642DT, dismissing MGA's patent infringement suit against General Motors Corporation (GM). We affirm the judgment of the district court.

## BACKGROUND

In 1979, MGA and LaSalle Tool executed an agreement, effective January 1, 1979, which included a paid-up license and release under United States Patent No. 3,570,656 ('656) for accumulator conveyor machines sold to purchasers including GM, and shipped by LaSalle Tool prior to 1979 and a license, at a specified royalty, for machines sold after 1978. Thereafter, LaSalle Tool developed, manufactured and sold newly designed accumulator conveyor machines (accused machines). It did not report or pay royalties to MGA on these sales because it regarded the accused machines as being outside the scope of the license under the '656 patent.

On April 14, 1981, MGA sued LaSalle Tool in the Oakland County Circuit Court, State of Michigan, for nonpayment of royalties due under the license agreement on post–1978 sales of the accused machines. After a four-day bench trial, the circuit court held that the accused machines were not covered by the license agreement and entered a final judgment of no cause of action on December 3, 1984. MGA appealed this final judgment to the Michigan Court of Appeals, which upheld the trial court's judgment in an opinion dated January 21, 1986, noting that the trial judge had implicitly found that the accused machines were not covered by the relevant claims of MGA's '656 patent. *MGA, Inc. v. LaSalle Machine Tool, Inc.*, 148 Mich.App. 350, 384 N.W.2d 159 (1986). MGA filed for leave to appeal to the Michigan Supreme Court and leave was denied.

Meanwhile, on July 5, 1983, MGA filed a patent infringement action against GM asserting infringement of the '656 patent by GM's use of the accused machines sold to it by LaSalle Tool. LaSalle Tool, a defendant-intervenor in this suit, moved for summary judgment on the basis that as to the pre–1979 machines, MGA's release of La-Salle Tool also acted as a release of GM as a purchaser of those machines. With regard to the accused machines, LaSalle Tool asserted that either the machines were covered by the license agreement, or the Michigan judgment precluded relitigation of the issue of whether the accused machines were covered by the patents in suit by operation of res judicata, collateral estoppel, or the *Kessler* doctrine, as announced in *Kessler v. Eldred*, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907). MGA admits that the accused machines in this patent infringement suit are the same as the accused machines for which it sought license royalties in the circuit court. The district court granted LaSalle Tool's motion for summary judgment, holding that the state court judgment precluded relitigation of the issue of whether the accused machines infringed the claims of the patent in suit.

## ISSUE

Did the district court, in a patent infringement suit against the user of the accused machines, err in giving preclusive effect to a state court judgment, which held that the accused machines were outside the scope of the patent license agreement?

## OPINION

On appeal, MGA argues that the district court erred in giving the state court judgment preclusive effect because (1) the state court judgment was constitutionally infirm, (2) it would be unfair due to the conduct of the state court litigation, (3) the district court did not follow Michigan law on res judicata, and (4) the *Kessler* doctrine does not apply to the facts in this case.

### I. Collateral Attack

MGA urges this court to review the decisions of the Michigan courts and conclude that the circuit court acted in a completely arbitrary manner and that the appellate court, in affirming the circuit court, made a puzzling, transparent, and strained attempt to clothe the circuit court decision with a reasonable legal basis. These con-

tentions do not support a constitutional challenge to the state court proceedings. MGA merely disagrees with the Michigan courts' application of federal law. MGA's avenue to redress any legal errors committed in these decisions was to appeal, as it did, to each available level in the Michigan court system. It is inappropriate to collaterally attack the Michigan judgment in federal district court in an attempt to avoid, defeat or evade the judgment thus denying it force and effect. *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972) (Although the second suit "has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment."); *see also Southern Pac. Transp. Co. v. Pub. Util. Comm'n of California*, 716 F.2d 1285, 1290 (9th Cir. 1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (proper avenue of review of state court interpretation of federal law is to appeal to the United States Supreme Court, not to file new claim in federal court); *cf. Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assn.*, 455 U.S. 691, 714, 102 S.Ct. 1357, 1371, 71 L.Ed.2d 558 (1982) (erroneous or not, the proper avenue is to appeal from the judgment, not to seek collateral review); *Rollins v. Dwyer*, 666 F.2d 141, 148 (5th Cir. 1982) ("Under res judicata principles, we do not review state court judgments for error; we look only to finality."). Accordingly, we find MGA's constitutional arguments addressing the Michigan judgment without merit.

## II.  Prior Judgment

The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *see also Young Engineers, Inc. v. ITC*, 721 F.2d 1305, 219 USPQ 1142 (Fed. Cir.1983) (res judicata); *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 218 USPQ

965 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984) (collateral estoppel). That federal courts are to afford full faith and credit to judgments reached in state court proceedings, *see* U.S. Const., art. IV, § 1, is clearly expressed in section 1738, paragraph 2 of Title 28 of the United States Code:

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738 (1982).

The full faith and credit statute does not permit federal courts to employ their own rules of res judicata in determining the effects of state judgments. Rather, a federal court is to accept the rules chosen by the state in which the judgment is rendered. This remains true even though that judgment turned on construction of subject matter within the exclusive jurisdiction of the federal courts. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897–98, 72 L.Ed.2d 262 (1982); *see also Syntex Opthalmics, Inc. v. Novicky*, 767 F.2d 901, 902, 226 USPQ 952, 953 (Fed.Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1463, 89 L.Ed.2d 719 (1986); *Graybill v. United States Postal Serv.*, 782 F.2d 1567, 1571 (Fed.Cir.1986).

*Kremer* does require that before a state can grant preclusive effect to its own judgment, applicable requirements of the Due Process Clause must have been satisfied.

*Kremer,* 456 U.S. at 482, 102 S.Ct. at 1898. This judicial safeguard does not preclude the district court's reliance on the Michigan litigation here. MGA does not assert that it lacked a full and fair opportunity to present its case to the state court. Rather, MGA takes umbrage with the state courts' analysis of the law of infringement, the applicability of the doctrine of equivalents, and of prosecution history estoppel and asserts that the decision reveals "a violation of substantive due process because of its arbitrary and capricious nature."

■ Although the state courts' opinions may be less than ideal discussions of patent law, the dispute presented by the parties was resolved. The result need not be the result that a second court would reach to invoke principles of res judicata. Finality, not correctness is the key. *See* Restatement (Second) of Judgments §§ 13, 29 (1982). MGA's allegations do not amount to a claim that the forum of MGA's choosing failed to provide it an opportunity to present its best case. " 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' " *Kremer,* 456 U.S. at 483, 102 S.Ct. at 1898 (quoting *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1961)). MGA does not allege that it was denied an opportunity to present any theory of its case, submit exhibits, offer testimony, or to rebut evidence submitted by the other party. Thus the alleged errors in analysis do not rise to the level of a denial of procedural or substantive due process.

MGA admits that the Michigan state court litigation involved the issue of whether the '656 patent covered the accused machines and resolved that issue adversely to it. However, MGA contends correctly that under *Marrese v. American Academy of Orthopaedic Surgeons,* the application of issue preclusion arising from a Michigan state court judgment is controlled by Michigan law and contends that, under Michigan law, mutuality between parties to litigation continues to be required for any preclusive effect to be given a prior judgment. Thus, MGA argues, it is not collaterally estopped

from relitigating the issue of infringement against GM. Since there is no Michigan state court case involving a similar factual pattern, we must extrapolate from the existing Michigan preclusion principles to determine what preclusive effect the prior judgment against MGA *would* be given in a Michigan state court. *Marrese,* 470 U.S. at 381–82, 105 S.Ct. at 1333.

■ Although not abrogating the requirement of mutuality—both the litigants in the subsequent action must be similarly bound by the judgment in the prior action or it binds neither—in the application of collateral estoppel, the Michigan Supreme Court has acknowledged that there are well recognized exceptions to the mutuality rule which, in effect, produce the same result as unilateral estoppel or nonmutuality. *Howell v. Vito's Trucking and Excavating Co.,* 386 Mich. 37, 191 N.W.2d 313, 317–18 n. 7 (1971). Michigan courts recognize that "where the liability of the defendant is entirely dependent upon the culpability of one exonerated in a prior suit" an exception to the requirement of mutuality exists, *De Polo v. Greig,* 338 Mich. 703, 62 N.W.2d 441, 444 (1954), and that "the recognized exceptions are confined to defensive pleading of collateral estoppel by only a certain class of defendants in special situations." *Howell,* 191 N.W.2d at 317–18 (court must strike a balance between the interest of the litigant against whom preclusion is asserted and repetitious and needless litigation which burdens court dockets). The fact that the estoppel is asserted defensively is a significant fact, under Michigan law, in determining whether collateral estoppel should or should not apply. *Id.* In this case, GM is pleading collateral estoppel defensively.

*Kessler v. Eldred,* 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907), was handed down by the United States Supreme Court in the heyday of the federal mutuality of estoppel rule. *See Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Found.,* 402 U.S. 313, 320–27, 91 S.Ct. 1434, 1439–42, 28 L.Ed.2d 788 (1971) overruling *Triplett v. Lowell,* 297 U.S. 638, 642, 56 S.Ct. 645, 647, 80 L.Ed. 949 (1936). Whether the principle

espoused by this case, which came to be known as the *Kessler* doctrine, is a matter of substantive federal patent law, or whether it is a long recognized exception to the mutuality of estoppel rule, we need not, and do not decide. Whichever it is, we discern from a review of the law of the state of Michigan, that its courts would apply the *Kessler* doctrine, which in its effect may be compared to defensive collateral estoppel, to give preclusive effect to the issue of noninfringement of the '656 patent by the accused machines. *See Braxton v. Litchalk*, 55 Mich.App. 708, 223 N.W.2d 316, 320 (Ct.App.1974) (court must determine whether the one against whom collateral estoppel is asserted had a fair opportunity to litigate the issue in the previous suit).

*Kessler's* facts are analogous to those of this case. Eldred sued Kessler for infringement of Eldred's patent on an electric cigar lighter, but, after a full hearing, the trial court held that Kessler's lighter did not infringe. Kessler then sold his lighters to one Breitwieser, whereupon Eldred sued Breitwieser for infringing use of his patented lighter. Distraught at the prospect of Eldred's harassment of his customers, Kessler sought and obtained an injunction against Eldred, prohibiting suits against Kessler's customers. The Supreme Court recognized that, due to the mutuality rule, Kessler's customer, Breitwieser, could not assert the prior judgment of noninfringement as a defense to Eldred's infringement action, since he had not been a party to the first action and was not, therefore, mutually bound by it. The court held:

> On the issue thus joined there was final judgment for Kessler. This judgment, whether it proceeds upon good reasons or upon bad reasons, whether it was right or wrong, settled finally and everywhere, and so far as Eldred, by virtue of his ownership of the Chambers patent, was concerned, that Kessler had the right to manufacture, use and sell the electric cigar lighter before the court. The court, having before it the respective rights and duties on the matter in question of the parties to the litigation, conclusively decreed the right of Kessler to manufacture and sell his manufactures free from all interference from Eldred by virtue of the Chambers patent, and the corresponding duty of Eldred to recognize and yield to that right everywhere and always.... Whether the judgment between Kessler and Eldred is a bar to the suit of *Eldred v. Breitwieser*, either because Breitwieser was a privy to the original judgment, or because the articles themselves were by that judgment freed from the control of that patent, we deem it unnecessary to inquire.... But the question here is whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler.... [I]t is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so. If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it.

206 U.S. at 288–89, 27 S.Ct. at 612–13.

■ The *Kessler* doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent; otherwise, the effect of the prior judgment would be virtually destroyed. In *Rubber Tire Wheel Co. v. Goodyear Tire and Rubber Co.*, 232 U.S. 413, 34 S.Ct. 403, 58 L.Ed.2d 663 (1914), the Court interpreted *Kessler* as granting a limited trade right which is "the right to have that which [a court has determined] it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product—to a particular thing—as an article of lawful commerce...." *Id.* at 418–19, 34 S.Ct. at 405 (1914). Since the accused machines here are admittedly the same in both suits, it is LaSalle Tool's right

that the accused machines be freely traded without interference from MGA.

◼ In this case, MGA selected its first defendant, first forum and first remedy. MGA had its day in court with a full trial on the merits of its case. MGA does not argue that there is newly discovered evidence that would likely lead the second court to a different determination, nor do we imply that this alone would be sufficient to change the result. Nor was MGA left without recourse to seek correction of any perceived errors committed by the state court. *Cf. Blonder-Tongue,* 402 U.S. at 328–50, 91 S.Ct. at 1442–53 (validity determination); *see also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Hence, the judgment of the district court is affirmed.

### III. Sanctions

◼ We now address LaSalle Tool's and GM's allegation that this appeal was frivolous and their request for damages and costs under Rule 38 of the Federal Rules of Appellate Procedure and 28 U.S.C. §§ 1912, 1927 (1982). Under these circumstances we do not grant such a request. After extensive briefing on the preclusive effect of the state court judgment, the district court "resolved [the question] by resorting to logic rather than doctrine." *MGA,* slip op. at 9. It was not a frivolous act for MGA to pursue the legal avenues available to it in order to obtain a decision with delineated legal reasoning. Furthermore, MGA did not present an argument without foundation; rather this court refused to adopt MGA's interpretation of the Michigan and federal case law on this debate. *Cf. Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1554, 220 USPQ 193, 203 (Fed. Cir.1983) (noting that appeals "having a small chance of success are not for that reason alone frivolous").

AFFIRMED.