**IMPERIAL APPLIANCE CORPORA-TION et al., Plaintiffs-Appellees,**

v.

**HAMILTON MANUFACTURING COM-PANY, Defendant-Appellant.**

No. 18039.

United States Court of Appeals, Seventh Circuit.

July 7, 1970.

Rehearing Denied Sept. 3, 1970.

Arlie O. Boswell, Jr., Chicago, Ill., A. F. Rankin, Manitowoc, Wis., for defendant-appellant.

Eugene C. Knoblock, South Bend, Ind., Paul R. Puerner, Milwaukee, Wis., for plaintiffs-appellees.

Before Justice CLARK,* SWYGERT, Chief Judge, and FAIRCHILD, Circuit Judge.

SWYGERT, Chief Judge.

This is an interlocutory appeal brought by Hamilton Manufacturing Company pursuant to 28 U.S.C. § 1292(b). The sole question for review is whether the district court correctly ruled that jurisdiction exists under 28 U.S.C. § 1338(a) to entertain a patent infringement suit brought by Imperial Appliance Corporation against Hamilton. We affirm.

The facts, which are reported fully in two prior opinions of the district court. Imperial Appliance Corp. v. Hamilton Mfg. Co., 263 F.Supp. 1015 (E.D.Wis. 1967), and Imperial Appliance Corp. v. Hamilton Mfg. Co., 239 F.Supp. 175 (E.D.Wis.1965), need not be set out in great detail here. In 1937 and 1938 James R. Moore filed applications for letters patent, serial numbers 177,123 and 236,189, describing and claiming inventions to be used in the manufacture of clothes dryers. Moore thereafter assigned his rights in the "Moore patents" to F. W. Griswold. On November 9, 1938 Griswold entered into a licensing agreement granting exclusive rights to Imperial to manufacture and sell dryers embodying the Moore applications. Subsequently Griswold assigned his interest in the Moore patents to Stanley G. Harwood.

In November 1941 in an agreement entitled the "New Harwood-Imperial Agreement," the 1938 Imperial license was amended to permit Imperial to sublicense to Hamilton the right to manufacture and sell dryers under the Moore applications. The 1938 license was also modified to include the following provision as paragraph 1 of the new Harwood-Imperial agreement:

1. That any and all improvements of the Dryer or in the process of manufacturing the same heretofore, or hereafter made by or at the instance of either Imperial or Hamilton, are understood to be and remain the property of Harwood as assignee-owner of the applications for Letters Patent and/or Patents of or relating to said Dryer in the United States of America and the Dominion of Canada; and that the aforementioned agreement of November 9, 1938 is hereby understood and declared to extend for the full term of such patents issued and to be issued, and any and all improvements thereto.

Imperial and Hamilton simultaneously entered into a sublicense agreement entitled "Contract and License" which incorporates the New Harwood-Imperial Agreement for reference. Under the Contract and License, Hamilton paid royalties to both Imperial and Harwood.

On September 18, 1945 the Moore patents issued as U. S. Patents No. 2,385,222 and No. 2,385,223. On the next day Moore applied for another patent and immediately assigned his interest in the new application to Hamilton. Thereafter, on February 6, 1951 the patent issued as U. S. Patent No, 2,540,955 in Hamilton's name as patentee. Until 1962 Harwood and Imperial received royalties on dryers manufactured and sold by Hamilton. On September 18, 1962, the date of expiration of the Moore patents, Hamilton declared the Contract and License terminated by its own provisions and ceased to pay royalties.

In 1963 Imperial commenced a diversity action against Hamilton alleging that the '955 patent was an improvement patent under the New Harwood-Imperial Agreement; that the Contract and License remained in effect; and that Hamilton continued to be liable for royalties on the '955 patent until its expiration on February 6, 1968. The district

* Honorable Tom C. Clark, Associate Justice of the United States Supreme Court, Retired, is sitting by special designation.

court, in an unpublished memorandum opinion, held that the Contract and License terminated at the expiration of the Moore patents and did not impose an obligation to pay royalties on improvement patents. The court further ruled that paragraph 1 of the New Harwood-Imperial Agreement granted Imperial an exclusive license to improvements on the Moore patents. The court described Imperial's rights as exclusive licensee as follows: "Assuming for purposes of this decision that Patent No. 2,540,955 discloses improvements to the Moore Patents, and assuming further that Hamilton has been and is now utilizing the purported improvements in the manufacture and sale of clothes dryers, the use would be in derogation of Harwood's and Imperial's rights to improvements that Hamilton acknowledged in the Contract and License. However, plaintiffs' remedy for the unauthorized use does not lie in an action based on breach of the royalty payment or unilateral termination provisions of the Contract and License as alleged in the Complaint herein."

On January 29, 1968 Imperial amended its complaint to allege that Hamilton's use of the '955 patent constituted infringement of its exclusive license to improvement patents. Harwood and certain heirs of Moore (Harwood had reassigned an undivided one-half interest in the Moore patents to Moore in 1946) were added as plaintiffs, thus destroying diversity of citizenship as a basis for jurisdiction. Hamilton thereupon moved to dismiss for lack of jurisdiction. The district court in another unpublished opinion denied Hamilton's motion, holding that Imperial's suit was one for infringement arising under the patent laws. This appeal followed.

■ Federal jurisdiction in patent cases exists under 28 U.S.C. § 1338(a) which provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights, and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." Hamil-

ton argues that Imperial's infringement suit does not arise under the patent laws since the district court must determine whether the '955 patent is an improvement on the Moore patents and thus the property of Harwood as patentee and Imperial as exclusive licensee. We disagree.

■ Although state courts are permitted to decide patent questions incidental to claims arising under state law, Pratt v. Paris Gas Light & Coke Co., 168 U.S. 255, 259, 18 S.Ct. 62, 42 L.Ed. 458 (1897), federal courts have exclusive jurisdiction over cases in which plaintiff's cause of action is created by the patent laws. American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). The boundary between federal and state court jurisdiction is further clarified by the concise statement of Chief Justice Taft in Luckett v. Delpark, Inc., 270 U.S. 496, 510–511, 46 S.Ct. 397, 70 L.Ed. 703 (1926):

> [W]here a patentee complainant makes his suit one for recovery of royalties under a contract of license or assignment, or for damages for a breach of its covenants, or for a specific performance thereof, or asks the aid of the Court in declaring a forfeiture of the license or in restoring an unclouded title to the patent, he does not give the federal district court jurisdiction of the cause as one arising under the patent laws. Nor may he confer it in such a case by adding to his bill an averment that after the forfeiture shall be declared, or the title to the patent shall be restored, he fears the defendant will infringe and therefore asks an injunction to prevent it.

We are convinced that under these rules Imperial's cause of action arises under the patent laws.

■ Hamilton maintains that the plaintiff must have unclouded legal title in order to confer federal jurisdiction in an infringement suit. *See* Laning v. National Ribbon & Carbon Paper Mfg. Co., 125 F.2d 565 (7th Cir. 1942); Lion Mfg. Corp. v. Chicago Flexible Shaft Co.,

**188**

106 F.2d 930 (7th Cir. 1939); Dill Mfg. Co. v. Goff, 125 F.2d 676 (6th Cir. 1942). This argument constitutes a misstatement of existing principles governing patent jurisdiction. Courts have long held that jurisdiction is not defeated by a plea in the defendant's answer challenging plaintiff's title to the patent in suit, Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U.S. 282, 22 S.Ct. 681, 46 L.Ed. 910 (1902), or even by the anticipation of such a defense in plaintiff's complaint. Healy v. Sea Gull Specialty Co., 237 U.S. 479, 35 S.Ct. 658, 59 L.Ed. 1056 (1913). When plaintiff's title is challenged, jurisdiction depends not only upon pleading rules but also upon the extent to which the dispute concerning title rests upon patent as opposed to state law questions. Littlefield v. Perry, 88 U.S. (21 Wall.) 205, 22 L.Ed. 577 (1874).

■ In the instant case the district court decided in Imperial's diversity suit against Hamilton that Imperial is entitled to improvements on the Moore patents. Thus in contrast to cases such as Laning v. National Ribbon & Carbon Paper Mfg. Co., *supra,* and Lion Mfg. Corp. v. Chicago Flexible Shaft Co., *supra,* the essential question of contract interpretation has already been resolved. The only question remaining is whether the '955 patent is an improvement upon the Moore patents. That question is only nominally one of contract interpretation since the parties undoubtedly included "improvement" as a term of art under the patent laws. Thus the determination of whether a device is an improvement is a question of law resting upon matters such as the validity of the patent on the alleged improvement and the extent of its dependence upon existing patents. 1 A. W. Deller, Walker on Patents, § 19 at 130 (2d ed. 1964). To require this question to be decided by state courts when further questions of contract interpretation are not involved would defeat the policies of uniformity and expertise which prompted Congress to grant exclusive patent jurisdiction to the federal courts.

Our conclusion is fully supported by Littlefield v. Perry, 88 U.S. (21 Wall.)

205, 22 L.Ed. 577 (1874), the only Supreme Court case which speaks directly to the question before us. In that case plaintiff received an exclusive license on an 1851 patent which included the right to improvement patents. Although plaintiff lacked formal legal title, the Court nevertheless, ruled that plaintiff was entitled to maintain an infringement suit against the patentee who was employing an alleged improvement. Hamilton has failed to demonstrate that this holding, which is identical to our own, has been overruled by subsequent cases.

The ruling appealed from is affirmed.