[No. 1572-1. Division One. May 6, 1974.]

CONSOLIDATED KINETICS CORPORATION, *Appellant*, v. MARSHALL, NEIL & PAULEY, INC., *et al.*, *Respondents*.

174

*DeGarmo, Leedy, Oles & Morrison* and *Freeman T. Eagleson, Jr.,* and *Seth W. Morrison,* for appellant.

*Arnold, White & Durkee, Paul M. Janicke, Frank S. Vaden, Seed, Berry, Dowrey & Cross,* and *Kenneth W. Vernon,* for respondents.

HOROWITZ, J.—Plaintiff sued defendants to enjoin them from manufacturing and selling a certain type of compressed fiberglass vibration isolation pad in violation of a contract between the parties dated August 9, 1967. Plaintiff appeals a judgment dismissing its action.

Plaintiff Consolidated Kinetics Corporation (Kinetics) and Marshall, Neil & Pauley, Inc., and Air Control, Inc., its selling agent, (Marshall) are competitors in noise and vibration isolation systems for use in the building industry. Kinetics is the owner of U.S. Patent 3,095,187 ('187) dated June 25, 1963, describing an apparatus for isolating vibrations. The inventors named on the patent are Laurence L. Eberhart and Patrick M. Sweeney. Eberhart, assignor of Kinetics' patent '187, later designed, and in 1962 pursuant thereto, Kinetics manufactured for marketing by Owens-Corning Fiberglass Company a glass fiber unit isolation mount having a close-fitting flexible covering, with notation thereon "Pat. pending." Kinetics' product is principally used in a floor system to isolate mechanical and sound vibration otherwise occurring in buildings, as from moving or rotating equipment.

In the fall of 1965 Eberhart, then president of Kinetics, learned that Marshall, through its Amber/Booth division, was offering a product for sale which appeared to be a copy of its glass fiber unit isolation mount. Findings of fact No. 4, 5. A controversy followed. The parties finally resolved their controversy by executing an agreement dated August 9, 1967. The agreement stated Kinetics was the owner of certain "U. S. patents and the inventions therein disclosed and claimed . . ." The patent numbers included patent '187. Under that agreement, the Amber/Booth division of Marshall, *inter alia,* agreed

> not to manufacture, sell or offer for sale during the life of the patent listed in paragraph 2:1 last to expire, fiberglas isolation pads wherein the fiberglas material is of the type defined in the claims of said patents and wherein said pads include a flexible covering material to confine or appreciably restrict the flow of air to and from the interstices of the pad.

See findings of fact No. 5, 6.

Amber/Booth then virtually withdrew from marketing of glass fiber isolation pads. By 1969 the Kinetics product became the accepted standard for a noise and vibration medium. In 1969 Amber/Booth determined to reenter the rapidly expanding market for individual, high-density, pre-compressed glass fiber isolation pads, especially the market calling for pads with a covering. In an attempt to avoid the prohibition of the August 9, 1967, agreement, Amber/Booth encased its glass fiber isolation pad in a loose-fitting polyethylene envelope. The Amber/Booth pads were then sold and used in a number of buildings.

Kinetics considered Amber/Booth's actions in marketing the latter's product to be a breach of the August 9, 1967, agreement. Kinetics then sued to enjoin defendant's claimed continuing breach of contract. Marshall's answer, *inter alia,* denied any breach and alleged a defense based on want of consideration, namely, that Kinetics' patents described in that agreement were void for noncompliance

with the requirements of patentability specified in 35 U.S.C. §§ 100, *et seq*.

During trial the issues concerning the patents appear ultimately to have been confined to a consideration of the validity of patent '187. After trial the court entered detailed findings and conclusions generally favorable to Marshall on the issue of patent validity, and entered judgment dismissing Kinetics' complaint. The court found the Marshall product violated the August 9, 1967, agreement in that "[d]efendants' polyethylene envelope does appreciably restrict the flow of air to and from the interstices of the glass fiber pad." Finding of fact No. 17. However, the court further found that "[t]he combination of the '187 was suggested by the prior art and does not produce the unexpected or surprising results asserted in the patent." Finding of fact No. 31. The court also found:

On consideration of all the prior art, the combination of the '187 patent would have been as a whole obvious to a person [of] ordinary skill in the art at the time the invention was made.

Finding of fact No. 32. The court concluded: "Claims 1, 2, 4, and 5 of plaintiff's patent 3,095,187 are invalid for obviousness." Conclusion of law No. 1. The court refused to enter plaintiff's proposed finding of fact No. 32, a finding inconsistent with finding of fact No. 32.

Kinetics contends the court lacked jurisdiction to pass on the question of patent validity and therefore should have entered judgment for Kinetics because of Marshall's breach of the August 9, 1967, agreement. Kinetics alternatively contends the court erred in entering findings of fact No. 31 and 32, conclusion of law No. 1, and further erred in not entering Kinetics' proposed finding of fact No. 32.

We consider first the question of the trial court's jurisdiction to pass upon the question of patent validity. Kinetics argues the United States district courts have exclusive jurisdiction "of any civil action arising under any Act of Congress relating to patents . . . ." 28 U.S.C. § 1338 (a). Kinetics then argues that by the August 9, 1967, claim

settlement agreement, the Amber/Booth division of Marshall in effect agreed not to infringe patent '187; that in substance Kinetics' action for breach of contract is an action to enjoin patent infringement, a matter within the exclusive jurisdiction of the federal courts. We do not agree with Kinetics' position on the court's jurisdiction.

The courts recognize a distinction between jurisdiction of actions arising "under any Act of Congress relating to patents . . ." (28 U.S.C. § 1338(a)), and jurisdiction to determine questions or issues of patent law in causes of action cognizable by state courts. State courts have jurisdiction to pass upon questions or issues involving patent laws. *Pratt v. Paris Gas Light & Coke Co.*, 168 U.S. 255, 259, 42 L. Ed. 458, 18 S. Ct. 62 (1897); *Kysor Indus. Corp. v. Pet, Inc.*, 459 F.2d 1010 (6th Cir. 1972); *Koratron Co. v. Deering Milliken, Inc.*, 418 F.2d 1314, 10 A.L.R. Fed. 636 (9th Cir. 1969); *Coty, Inc. v. Bourjois, Inc.*, 109 F. Supp. 431 (S.D.N.Y. 1952). *See Osgood Panel & Veneer Co. v. Osgood*, 166 Wash. 315, 6 P.2d 661 (1932). The federal law on validity governs. *Blumenfeld v. Arneson Prods., Inc.*, 172 U.S.P.Q. 76 (Cal. Ct. App. 1971).

*Lear, Inc. v. Adkins*, 395 U.S. 653, 23 L. Ed. 2d 610, 89 S. Ct. 1902 (1969), makes it clear that in an action in a state court to recover patent royalties required to be paid pursuant to contract, the state court has jurisdiction to consider the issue of patent validity as a defense to the action.

Since *Lear, Inc. v. Adkins, supra,* state courts have passed upon the defense of patent validity in breach of contract cases. *See, e.g., Keladiro, Inc. v. Valve & Primer Corp.*, 177 U.S.P.Q. 796 (Cal. Super. Ct., Alameda Cty. 1973); *Blumenfeld v. Arneson Prods., Inc., supra*; *American Harley Corp. v. Irvin Indus., Inc.*, 27 N.Y.2d 168, 263 N.E.2d 552, 315 N.Y.S.2d 129 (1970); *Rialto Prods., Inc. v. Rayex Corp.*, 166 U.S.P.Q. 222 (N.Y. Sup. Ct. 1970). *See generally* Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation*, 46 Wash L. Rev. 633 (1971).

In *American Harley Corp. v. Irvin Indus., Inc., supra* at 177-80, Judge Breitel in his concurring opinion explained:

That validity of the patent is involved in an action is not determinative of jurisdiction. Although Federal courts have exclusive jurisdiction over cases arising under the patent laws (U. S. Code, tit. 28, § 1338, subd. [a]), State courts may determine the validity of a patent when incidental to an action based on contract or tort (see *Middlebrook v. Broadbent,* 47 N. Y. 443, 446-447; *Zenie v. Miskend,* 245 App. Div. 634, 637-639, affd. 270 N. Y. 636). The principle was recently affirmed in *Lear, Inc. v. Adkins,* (395 U. S. 653) . . . The issue in determining jurisdiction is whether the alleged causes of action are in fact different from an action for infringement, protecting rights and interests consistent with, but apart from, those created by the patent laws.

. . .

The existence of a Federal remedy will not preclude State courts from affording their own remedies, providing that relief is based on cognizable and separable common-law rights. Those with the power to enforce a patent may elect to waive the infringement and, instead, sue on the agreement relating to the use of the patented article. The State courts have jurisdiction even if damages would be measured by the same loss which results from infringement, and recovery would preclude further damages for the infringement. (*Henry v. Dick Co.,* 224 U. S. 1, 14.) Invasions over which the State courts may have cognizance include palming off, or other forms of unfair competition, or affronts to contract rights based on patents, such as royalties (*Lear, Inc. v. Adkins,* 395 U. S. 653, *supra;* . . .).

Kinetics argues if the validity of a patent is the principal issue involved, even in a breach of contract case, the federal court's jurisdiction to resolve the issue of patent validity is exclusive. It relies on *Imperial Appliance Corp. v. Hamilton Mfg. Co.,* 430 F.2d 185 (7th Cir. 1970), and *Van Prods. Co. v. General Welding & Fabricating Co.,* 419 Pa. 248, 213 A.2d 769, 30 A.L.R.3d 612 (1965). The cases do not support Kinetics. *Imperial* involved a claim that defendant's use of a patent constituted infringement of his exclusive license to improvement patents. Accordingly, the case

involved an action "arising under" the patent laws. Here only breach of contract is involved in which the validity of the patent may be shown to be a defense. *Van Prods. Co.* involved an action to obtain equitable relief and damages against defendant based on abuse of confidence by plaintiff's employee who "misappropriated secret information of Van and used it to produce and market a competing product manufactured by General." *Van Prods. Co. v. General Welding & Fabricating Co., supra* at 254. General's defense was it was marketing a product covered by its patents. The court held it had jurisdiction to pass on the state-created cause of action dealing with abuse of confidence. The complaint here alleges Marshall was manufacturing, selling and offering to sell the product described in that agreement in violation of its provisions. The remedy Kinetics seeks is injunctive relief and damages—a state-created cause of action and remedy. Kinetics does not seek relief for patent infringement under the cause of action created by 35 U.S.C. § 271.

Kinetics contends, however, its complaint in effect was amended by paragraph 2 of its contentions described in the "Pretrial Order of Contentions." That contention reads:

> That the Plaintiff has valid patents applicable to the isolation pads described in the agreement, being patents 3,095,187 and 3,201,109; and if it is determined that patents '187 and '109 are broader than the language of the agreement, and it is determined that Defendants have infringed the patents, even if they have not breached the agreement, then Plaintiff is entitled to patent infringement remedies.

It is noted that Kinetics' contention claiming patent infringement remedies was an alternative contention advanced by it if it were "determined that patents '187 and '109 are broader than the language of the agreement . . ." The court determined the scope of the agreement did not go beyond the scope of patent '187 (*see* finding of fact No. 34); it did not make the determination that patents '187 and '109 are broader than the language of the agreement. The par-

ties also stipulated for the elimination of patent '109 as an issue in the case. More importantly, Kinetics did not withdraw its claim of breach of contract alleged in its complaint. Kinetics' contention No. 1 reads:

> The Defendants have breached the agreement of August 9, 1967 by selling and offering to sell a fiberglass isolation pad with a flexible covering material which confines or appreciably restricts the flow of air to and from the interstices of the pad.

Kinetics' contentions did not abandon the remedies it sought for breach of contract and injunction based thereon —a state court remedy. Indeed, Kinetics continued to insist it was entitled to that remedy. We cannot hold the complaint was amended to give the state court jurisdiction of patent infringement remedies under 35 U.S.C. § 271 so as to oust the trial court of jurisdiction. *Koratron Co. v. Deering Milliken, Inc., supra.* Although Kinetics, on its view of the evidence, might have sued in the United States district court for patent infringement, it chose to pursue and continue to insist upon the remedy provided for a state-created cause of action. It is bound by that choice. Note rationale in *Kysor Indus. Corp. v. Pet, Inc., supra*; *Coty, Inc. v. Bourjois, Inc., supra*; *American Harley Corp. v. Irvin Indus., Inc., supra.*

The question remaining is whether, notwithstanding Kinetics' view of the evidence particularly as summarized in Kinetics' proposed finding of fact No. 32, the challenged findings are supported by substantial evidence so as to be binding upon us under *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Kinetics basically contends the *Thorndike* rule is inapplicable. It argues in part "[t]he essential facts are undisputed . . .," and this court must make "a determination as to obviousness which is essentially a conclusion of law." We disagree with Kinetics' basic contention and uphold the challenged findings and conclusion of law No. 1.

35 U.S.C. § 101 describes inventions patentable. 35 U.S.C. §§ 102 and 103 describe the conditions for patentability. The

test of patentability is "rather severe" (*Great Atl. & Pac. Tea Co. v. Supermarket Equip. Corp.*, 340 U.S. 147, 152, 95 L. Ed. 162, 71 S. Ct. 127 (1950)) and "demanding" (*Lear, Inc. v. Adkins, supra* at 676). An invention is not patentable if the invention as a whole would have been "obvious at the time the invention was made to a person having ordinary skill in the art . . ." 35 U.S.C. § 103; finding of fact No. 32. In making such a determination, a man skilled in the art is deemed to "possess all the available knowledge in the applicable art." *David & David, Inc. v. Myerson*, 388 F.2d 292, 294 (2d Cir. 1968); *Illinois Tool Works, Inc. v. Continental Can Co.*, 273 F. Supp. 94 (N.D. Ill. 1967), *aff'd,* 397 F.2d 517 (7th Cir. 1968); *Mohasco Indus., Inc. v. E.T. Barwick Mills, Inc.*, 221 F. Supp. 191 (N.D. Ga. 1963), *aff'd,* 340 F.2d 319 (5th Cir. 1965).

■ Before conclusions as to obviousness may be reached, factual determinations must be made. Their nature is described in *Graham v. John Deere Co.*, 383 U.S. 1, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966), which states:

> While the ultimate question of patent validity is one of law, . . . the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Graham v. John Deere Co., supra* at 17-18. *Waldon, Inc. v. Alexander Mfg. Co.*, 423 F.2d 91, 92 (5th Cir. 1970), summarizes the law as follows:

> In order to be patentable a device must be useful, novel, and non-obvious in light of the prior art. . . .

The question of non-obviousness under 35 U.S.C.A. § 103 involves factual determinations of what the prior art was; what, if any, improvements the patentee has made over the prior art; and the level of ordinary skill in the art. . . . From these factual findings the legal determination of whether the improvement would have been obvious to a person with ordinary skill in the art is made.

Marshall contends substantial evidence supports the challenged findings and, accordingly conclusion of law No. 1. The patent itself states:

In general, the present invention relates to vibration isolation systems that utilize the unique characteristics of pads of glass fiber material provided with a flexible covering. [Ex. 2, col. 1, lines 10-13.]

Kinetics' brief, relying on Kinetics' evidence, states (page 29):

None of the other patents or prior art references teach the furnishing of improved damping when combined with retaining the low frequency characteristic and the load bearing capability.

Marshall relies on the unchallenged findings favorable to its position on the controlling issue of obviousness and the evidence which it correctly summarizes which supports the challenged findings and conclusion. Kinetics apparently does not challenge Marshall's assertions that patent '187 claims 1 and 4 are representative of the group and that claims 2 and 5 merely add the limitation that the cover be impervious to air. Marshall describes the structure for accomplishing the function claimed for patent '187 as

a fiberglass pad in which the fibers are horizontally oriented and impregnant-free, plus a flexible cover (Claim 1). In Claim 4, it is further specified that the fibers have a diameter of not more than 0.0005 inch (a feature not asserted to be novel), and that the pad, *before the cover is added,* corresponds to the equation

$$W = W_0 \ e^{A(\sigma - \sigma_0)}$$

Marshall calls attention to the state of the prior art to show patent '187 was obvious to a person of ordinary skill at the

time the invention was made. Attention is particularly called to the Slayter patent issued in 1962; a book by Charles E. Crede entitled "Vibration and Shock Isolation" published about 1951; an article by Dr. Sol Musikant entitled "Vibration Damping Characteristics of Glass Fiber Cushioning" published in the February 1954 issue of Product Engineering; the manufacture and sale by Dr. Musikant's company of products embodying the features of patent '187; and expert testimony.

Marshall points out the 1962 Slayter patent describes a vibration isolator having a fiberglass pad with a flexible covering. The fibers are randomly oriented, rather than horizontally as in patent '187. The pad has impregnant-free interstices. The Slayter patent discloses low natural frequency, enhanced damping, and protection of the pad, these advantages being urged by the defendants for patent '187. Slayter shows the density of the fiberglass should be 10 to 12 pounds per cubic foot, the same range as in patent '187. Slayter states the covering wall can be made of "any suitable flexible material." Patent '187 says the same thing, namely, "neoprene, rubber, vinyl, or other suitable flexible compositions." Slayter teaches the purpose of the covering is to restrict air flow, the same thing being asserted by plaintiff to be prohibited by the August 9, 1967, agreement. Marshall further points out the equation appearing in claims 4 and 5 of patent '187 was published verbatim 10 years earlier by Charles E. Crede in his book entitled "Vibration and Shock Isolation." Crede states that when the equation referred to is followed, natural frequency does not rise as the load is decreased. The reference to Crede was not before the Patent Office.

Marshall also points out the horizontal fiber orientation claimed by Kinetics to be lacking in the Slayter patent was included in the subject matter of an article entitled "Vibration Damping Characteristics of Glass Fiber Cushioning" by Dr. Sol Musikant published in the February 1954 issue of Product Engineering. In that article, Dr. Musikant disclosed every feature of patent '187, namely, glass fiber pad

with horizontal fibers, flexible cover, use as a vibration isolator, and conformance to the Crede formula. This reference was not before the Patent Office.

Dr. Musikant testified he made and sold his product to several customers in the early 1950's. He testified, "In my opinion all the features of this claim [1 of patent '187] were present in the object sold . . ." He further testified that the equation of claims 4 and 5 of patent '187 published by Crede 10 years earlier "is typical of fibrous material when they are compressed . . ." Finally, Dr. Musikant showed how the curves representing his prior art products conformed to the Crede equation later appearing in patent '187.

Marshall calls attention to the testimony of plaintiff's expert witness, Mr. Palmer Jones, concerning claims 1 and 4 of patent '187:

Q. Now is there anything in claim one here that was not in the art in 1959 in your opinion?

A. No.

Concerning claim 4, containing the Crede equation, Mr. Jones testified:

Q. And does the shape of the curve in [prior art] Exhibit 89 resemble the shape of the curve in the Sweeney-Eberhart patent, figure seven?

A. The values are different, but the shape of the curve here resemble[s] the shape in the patent, yes.

Dr. Musikant's testimony is similar, namely:

Q. . . . Now, Mr. Musikant, will you please tell us whether there is any difference in principles or whether it is the same principles that Mr. Crede is talking about in that book (prior art Ex. 81) as we are all talking about in regard to fiberglass and your products of your company?

A. This is all identical. It is the same exact thing.

and

A. . . . In my opinion all the features of this claim were present in the object sold to Brainard . . .

Kinetics argues the Slayter patent does not teach maintaining low natural frequency of the pad after the cover is put on. Marshall points out that patent '187 does not disclose how to maintain the low natural frequency; that plaintiff's expert Eberhart's own testimony refutes his position because the coating finally used "which kept the natural fiberglass frequency under load and yet provided desirable damping and also kept out contaminants from the material and making it durable" is nowhere described in patent '187. Marshall further points out that if patent '187's vinyl or rubber coverings maintain low natural frequency, Musikant's vinyl or rubber coverings must do the same. According to laboratory tests submitted by both sides, the low natural frequency was a property of the Owens-Corning fiberglass alone, not of patent '187. Findings of fact No. 28 and 29.

Kinetics sought below to distinguish what is said in the Musikant publication from patent '187 because the flexible covers referred to in the article were for the purpose of enhancing shear strength in damping and because the actual Musikant products were to be used partly as shock isolators and not just as vibration isolators. It cannot be said from Kinetics' brief that Kinetics has abandoned this position on appeal. However, a different purpose or motive does not make an old structure new. *Mandel Bros. v. Wallace,* 335 U.S. 291, 93 L. Ed. 12, 69 S. Ct. 73 (1948). Furthermore, the Musikant article specifically points out that these products can be used as "vibration isolators" and even sets forth a recommended design "for vibration isolation applications."

■ In an effort to support its claim of patent validity, Kinetics argues that inventiveness is determined by the last step; that there is a presumption of patent validity from the issuance of the patent; and that in case of doubt commercial success is strong evidence of patent validity. Each of these factors must yield in face of evidence of obviousness. It does not matter that the patent is the last step if the difference is such "that the subject matter as a whole

would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Nor does the presumption of patent validity (35 U.S.C. § 282) control if overcome by evidence of nonpatentability because of obviousness. Furthermore, the presumption is seriously weakened, if not destroyed, if the Patent Office has not considered the most relevant prior art. *See e.g., Waldon, Inc. v. Alexander Mfg. Co., supra; Eisele v. St. Amour,* 423 F.2d 135 (6th Cir. 1970); *Scott Paper Co. v. Fort Howard Paper Co.,* 432 F.2d 1198 (7th Cir. 1970). "[T]he basis for the presumption vanishes . . ." *Beckman Instruments, Inc. v. Chemtronics, Inc.,* 439 F.2d 1369, 1375 (5th Cir. 1970). In the instant case the Patent Office failed to consider the earlier Crede formula and Dr. Musikant's article in Product Engineering published 6 years before; and it did not know of the earlier manufacture and sale of Dr. Musikant's product. 35 U.S.C. § 102. Furthermore, commercial success of Marshall's product without invention because of obviousness within the meaning of 35 U.S.C. § 103 does not make for patentability. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 24 L. Ed. 2d 258, 90 S. Ct. 305 (1969).

■ Findings of fact No. 31 and 32 in effect rejected Kinetics' contrary contentions embodied in its proposed finding of fact No. 32. We are bound by the court's challenged findings on factual issues because of support by substantial evidence. Conclusion of law No. 1 is supported by the findings.

Affirmed.

FARRIS and CALLOW, JJ., concur.