## MGA, INC v LaSALLE MACHINE TOOL, INC

Docket No. 80604. Submitted October 17, 1985, at Lansing.—Decided January 21, 1986. Leave to appeal applied for.

MGA, Inc., owned a patent for a mechanical accumulating conveyor system. MGA entered into a patent licensing agreement with LaSalle Machine Tool, Inc., whereby LaSalle would manufacture the patented system and would pay certain specified royalties to MGA for each system covered by the patent which was sold. LaSalle, after producing and selling MGA's patented system for a period of time, developed, patented and sold a new accumulating conveyor system. LaSalle did not pay any royalties to MGA for the units of the newly developed units which were sold. MGA brought an action in Oakland Circuit Court against LaSalle, alleging that LaSalle's newly developed system was covered by plaintiff's patent and that, accordingly, defendant had breached the patent licensing agreement. Defendant denied that its new system was covered by plaintiff's patent. The question at issue was whether defendant's system, which used a chain drive mechanism to function rather than the end-to-end abutting bars mechanism used in plaintiff's system, fell within plaintiff's patent claims that the device was to be operated by "abutment means" and with "like back and forth movement". The trial court, Robert C. Anderson, J., sitting without a jury, held that defendant's conveyor system was not covered by plaintiff's patent and that, accordingly, there was no breach of the patent licensing agreement. A judgment of no cause of action was entered. Plaintiff appealed. *Held:*

1. Since the claim brought by plaintiff was for breach of contractual duties and obligations which arose pursuant to the patent licensing agreement, Michigan courts had jurisdiction over the matter even though the matter turned on an interpretation of the language of plaintiff's patent. However, Michigan

REFERENCES

Am Jur 2d, Patents §§ 412 *et seq.*

Modern status of rules as to pendent federal jurisdiction over nonfederal claims. 5 ALR3d 1040.

See also the annotations in the ALR3d/4th Quick Index under Patents.

courts in construing patent provisions should apply federal court patent law decisions.

2. The trial court, after hearing expert testimony as to whether defendant's chain drive mechanism fell within the scope of the plaintiff's patent claims, determined that the defendant's mechanism did not literally infringe on plaintiff's patent claims. That finding cannot be said to be clearly erroneous.

3. Plaintiff is estopped from claiming that defendant's chain drive mechanism is a patent-protected equivalent of its end-to-end bar mechanism, since plaintiff specifically limited its patent claims to "end-to-end bars" and "abutment means" in order to obtain its patent and thus may not now expand its patent claims to cover "chains" and "flexible means".

4. Since defendant's new system was not covered by plaintiff's patent and, thus, was not subject to the patent licensing agreement, there was no breach of the licensing agreement when defendant refused to pay royalties to plaintiff on sales of the new system.

Affirmed.

1. PATENTS — COURTS — JURISDICTION — ACTIONS — COMMON LAW.

Jurisdiction over claims arising under the patent laws is exclusively vested in the federal courts; however, not all claims involving patent laws arise under the patent law; accordingly, a claim founded upon a common-law right, such as a licensing contract, may be brought in a state court even though the determination of the rights under the licensing contract turn upon the interpretation to be given to a patent (28 USC 1338[a]).

2. PATENTS — COURTS — JUDICIAL CONSTRUCTION.

State courts confronted with issues requiring the construing of a patent claim should apply patent decisions of the federal courts in addressing patent construction issues.

3. PATENTS — LITERAL INFRINGEMENT.

Literal infringement of a patent may be found if the accused device falls within the scope of the language of the asserted patent claims as properly interpreted.

4. PATENTS — INFRINGEMENT — QUESTIONS OF LAW — QUESTIONS OF FACT.

Resolution of a patent dispute involves a two-step process: (1) the court must, as a matter of law, define the scope of the patent claims if the language of the claims is undisputed; and (2) the

trier of fact must decide whether the patent claims as construed in law factually cover the accused device.

5. PATENTS — INFRINGEMENT — QUESTIONS OF FACT.

Construction of a patent claim should be left to the trier of fact or to the jury under appropriate instructions where the meaning of a term in a patent claim is disputed and extrinsic evidence is necessary to explain that term.

6. PATENTS — INFRINGEMENT — EQUIVALENTS OF PATENTED DEVICE.

A device is considered to be the equivalent of a patented device and thus a patent infringement when the allegedly infringing device employs substantially the same means to accomplish substantially the same result in substantially the same way (35 USC 112).

7. PATENTS — INFRINGEMENT — ESTOPPEL — FILE WRAPPER ESTOPPEL.

A patent applicant who has amended his patent claims or has made representations or arguments limiting or narrowing the scope of his claims in order to obtain the allowance of the claims over the prior art by the patent examiner is estopped from subsequently trying to expand the scope of the claims beyond those amendments, representations or arguments.

*John R. Benefiel,* for plaintiff.

*Stephenson & Boller, P.C.* (by *James E. Stephenson).* for defendant.

Before: V. J. BRENNAN, P.J., and BEASLEY and J. P. NOECKER,* JJ.

BEASLEY, J. On April 14, 1981, plaintiff, MGA, Inc., filed a complaint against defendant, LaSalle Machine Tool, Inc., alleging that defendant had violated a "patent license agreement" by not paying royalties to plaintiff for sales of machines covered by the license agreement. Plaintiff sought damages for the unpaid royalties and an injunction to enforce the license agreement in the future. On July 12, 1984, subsequent to a four-day bench trial, the trial judge issued a written opin-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ion finding that plaintiff had failed to prove by a preponderance of the evidence that the machines sold by defendant were covered by the license agreement. On Sepember 14, 1984, the trial judge entered a judgment of no cause of action.

The parties, both at trial and on appeal, argue that the determination of whether defendant has breached the license agreement rests on an interpretation of plaintiff's patent number 3,570,656. Since this case extensively involves federal patent law issues, we must initially determine if the state courts have jurisdiction over this matter.

Jurisdiction over claims "arising under" the patent laws is exclusively vested in the federal courts.[1] However, not all claims involving the patent laws "arise under" the patent law. In *A & C Engineering Co v Atherhold*,[2] the Michigan Supreme Court quoted with approval the rule stated in 167 ALR 1114, 1118 which drew the following distinction:

"[t]he correct rule is that if the plaintiff founds his suit directly on a breach of some right created by the patent laws, he makes a case arising under those laws and only a Federal court has jurisdiction; but if he founds his suit on some right vested in him by the common law, or by general equity jurisprudence, he makes a case arising under State law and only a State court has jurisdiction."

In determing whether a plaintiff's suit is founded directly on federal patent laws or on state common law, a court must look to the pleadings, specifically the relief sought.[3] In reviewing the pleadings in this case, plaintiff seeks damages and

---

[1] 28 USC 1338(a).

[2] 355 Mich 677, 681; 95 NW2d 871 (1959).

[3] *Air Products & Chemicals, Inc v Reichhold Chemicals, Inc,* 755 F2d 1559 (CA Fed, 1985).

an injunction only for royalties related to the licensing agreement. Plaintiff's claim is based on the licensing agreement and rights created by state contract law. Therefore, plaintiff's claim does not "arise under" federal patent law, and the state courts have jurisdiction in this matter.

The trial judge set out his findings of fact in his opinion. Initially, he described the background facts of the case and noted that the parties had entered a "patent licensing agreement" effective January 1, 1979. Under the agreement, defendant was to report sales of "conveyor accumulator devices" covered by the patent involved in the license agreement and pay a royalty to plaintiff. After operating under the license agreement for a period, defendant desired to avoid the royalty payments and become more competitive. Defendant designed and obtained patents on its own conveyor accumulator devices and then sold these newly developed accumulator devices without paying royalties to plaintiff.

After setting out these background facts, the trial judge noted that the specific issue at trial was whether defendant's accumulators (the "accused machines") were covered by paragraphs 13 and 31 ("claims" in patent law terminology) of plaintiff's patent which formed the basis for the licensing agreement. The trial court then noted the common design of conveyor accumulator devices and that this basic design had been patented prior to both plaintiff's and defendant's patents. The trial court further noted that defendant's accumulators use a chain device to function, whereas plaintiff's accumulators, under its patent, use end-to-end abutting bars.

After making these findings, the trial judge concluded that the accumulators sold by defendant were not covered by the license agreement. To

reach this conclusion, the trial judge implicitly found that defendant's accumulators were not covered by claims 13 and 31 of plaintiff's patent. Thus, the trial judge found that defendant did not breach the license agreement by selling its accumulators without paying royalties to plaintiff.

Construing patent claims is a somewhat novel experience for this Court, but the parties agree that state courts must apply patent law decisions of the federal courts in addressing patent construction issues.[4] The guidance of the federal court decisions is necessary for a proper determination of the issues involved in this case. Thus, our analysis follows that of the federal decisions.

In general, there are two separate methods of analysis for determining whether the claims of a patent cover a certain device. The first method of anyalysis is termed "literal infringement". The second method of analysis is termed "the doctrine of equivalents" and is often used when literal infringement is absent.[5] We will apply the "literal infringement" analysis first, since our disposition under that anyalysis also disposes of "the doctrine of equivalents" analysis.

"Literal infringement" may be found if the accused device falls within the scope of the language of the asserted claims as properly interpreted.[6] Thus, the asserted claims must be compared with the product accused of infringement.[7]

A court's comparison of the accused machines to the patent claims is broken down into two steps. First, the court must define the scope of the

---

[4] See *Consolidated Kenetics Corp v Marshall, Neil & Pauley, Inc*, 11 Wash App 173; 521 P2d 1209 (1974).

[5] *P M Palumbo v Don-Joy Co*, 762 F2d 969 (CA Fed, 1985).

[6] *Envirotech Corp v Al George, Inc*, 730 F2d 753 (CA Fed, 1984).

[7] *Amstar Corp v Envirotech Corp*, 730 F2d 1476 (CA Fed, 1984), *cert den — US —; 105 S Ct 306; 83 L Ed 2d 240 (1984).

claims. This construction of the claims is a question of law if the language of the claims is not disputed (as in this case).[8] Second, the trier of fact must decide whether the claims, as construed in law, cover the accused machine. This involves an issue of fact.[9]

In the within case, the function and components of defendant's machines are not in dispute. An accumulator is a device which operates within a conveyor system. A conveyor transports parts from one area to another. In many factory conveyor systems it is important not to have lags or gaps when parts are missing from their positions on the conveyor. Thus, if a part is removed or falls off, a method is needed to fill in the spot of the removed or lost part. Accumulators serve this role by pushing forward the parts behind the gap, thus filling the gap. Every type of accumulator uses a "sensor" to find gaps along the conveyor. Once a gap is found, a "mechanism" is used to raise a "moving component" that pushes forward the parts behind the gap. The difference in accumulators is based on the various "mechanisms" used to activate the appropriate moving components. The earliest accumulators (before both plaintiff's and defendant's) used a pneumatic mechanism, which was often unreliable. Plaintiff's accumulator was the first to use a simple mechanical mechanism of "end-to-end bars". The parties agree that defendant's accumulator uses a simple mechanical mechanism of "chains and pivoting levers". Thus, the second issue involving the factual determination of the nature of the accused machine is not seriously in dispute.

The crucial step in this case is defining the scope

---

[8] *McGill, Inc v John Zink Co,* 736 F2d 666 (CA Fed, 1984), *cert den* — US —; 105 S Ct 514; 83 L Ed 2d 404 (1984).

[9] *Palumbo, supra.*

of the undisputed language of the claims in plaintiff's patent as a matter of law. This is the issue on which the trial court and the parties focused in four days of trial. Plaintiff asserted that claims 13 and 31 of its patent cover defendant's chain and pivoting lever accumulators. Defendant, and the trial court, interpreted the language of those claims not to cover defendant's accumulators.

Claim 13 includes the following devices:

"13. An accumulating feed system comprising a longitudinally arranged series of work supporting stations including a starting station at which workpieces are deposited serially, a delivery station from which workpieces are removed serially, and a plurality of intermediate stations through which workpieces are advanced intermittently and from which individual workpieces may be removed, sensing means associated with said stations to determine empty stations, feed means associated with each station except the discharge station operable to advance a workpiece from its station to the next successive station, and control means responsive to the sensing of the absence of a workpiece at the delivery or any intermediate station to activate the feed means of every station in rear of the empty station to simultaneously advance a workpiece to the next successive station, said control means comprising a series of individual separately movable elements, all of said elements being movable relative to a support in the same sense, and *abutment means* acting between said elements effective to ensure identical movement of all elements located in one direction from a particular element upon movement of such particular element, while the elements located in the opposite direction are not moved." (Emphasis added.)

Claim 31 includes the following devices:

"31. An accumulating feed system comprising a series of work support stations including a starting station at which workpieces are deposited serially, a delivery

station from which workpieces are removed serially, and a plurality of uniformly spaced intermediate stations between which workpieces are advanced intermittently, movable rigid sensing elements associated with said stations each having two positions corresponding to the presence or absence of a workpiece at the associated station and including an actuating portion movable between idle and actuating positions upon movement of said element, a transfer slide movable along said series of stations, means for reciprocating said slide in forward feeding and reverse strokes, a work transfer device for each station except the delivery station, and operable when activated to be moved by said transfer slide on forward feeding movement thereof to transfer a workpiece from its associated station to the station next ahead thereof, and means for controlling activation of said work transfer devices in accordance with the positions of said sensing means comprising a series of members disposed along said series of stations at intervals substantially equal to the spacing between said stations, said members being supported for *like back and forth movement* of the same sense between limiting positions which determine activation or nonactivation of the associated work transfer device, each of said members being independently and selectively movable between said limiting positions as a consequence of the position of the sensing element, each intermediate one of said members having one way engagement with one of the next adjacent members to effect movement thereof in the same sense as movement of said one intermediate member when said one intermediate member and said one next adjacent member occupy like positions prior to such movement, and having one way engagement with the other of the next adjacent members to effect movement thereof upon movement of said one intermediate member in the opposite sense when said one intermediate member and said other next adjacent member occupy like positions prior to such last mentioned movement." (Emphasis added.)

It is apparent from the trial record and the trial court's findings that the focus of interpretation for claim 13 was the phrase "abutment means", and

for claim 31 was the phrase "like back and forth movement". Plaintiff claimed that defendant's use of a chain and pivoting levers in its accumulators constituted "abutment means" and "back and forth movement" like the end-to-end abutting bars in plaintiff's design. The trial judge rejected this interpretation based on the evidence presented at trial.

In reviewing the trial judge's determination of this overall question of law, we first note that a recent federal decision states:

"But when the meaning of a term in the claim is disputed and extrinsic evidence is necessary to explain that term, then an underlying factual questions [sic] arises, and construction of the claim should be left to the trier or jury under appropriate instruction." *P M Palumbo v Don-Joy Co,* 762 F2d 969, 972 (CA Fed, 1985).

Extrinsic evidence was required to explain the terms in claims 13 and 31. Thus, we review the trial judge's interpretation of the terms in the claims as an issue of fact. Under the applicable standard of review, we conclude that the trial judge's determination that defendant's accumulators do not fall within the terms of claims 13 and 31 of plaintiff's patent is not clearly erroneous.

The trial court heard testimony from witnesses trained in the field of patent law and accumulator design that defendant's accumulator design did not use "abutment means" or "back and forth" motion like plaintiff's accumulator design. In addition, it was revealed that the basic accumulator design using a pneumatic design instead of end-to-end bars or a chain was patented prior to either plaintiff's or defendant's patent. The history of plaintiff's patent revealed that when plaintiff applied for its patent, it was required to change the broad

language of its claims to obtain approval. The reason for this change was so the claims in plaintiff's patent would not encompass the basic accumulator design already patented with a pneumatic mechanism. Thus, the patentable difference in plaintiff's design was solely attributable to its abutment means, end-to-end bar mechanism in the accumulator. Specific language covering pneumatic and flexible mechanisms (such as chains) was withdrawn from plaintiff's patent application.

The use of this evidence in interpreting the terms of the claims such as "abutment means" and "like back and forth motion" is clearly correct. In construing claims, a number of factors may be considered, including the language of the claim, the patent specification (end-to-end bars), the prosecution history of the patent (the file wrapper), other claims in the patent, and expert testimony.[10] In light of the evidence revealed at trial, the trial court's factual determination that defendant's chain mechanism accumulator was not covered by the terms of claims 13 and 31 in plaintiff's patent was not clearly erroneous.

This conclusion is supported by the distinction drawn between two recent federal court patent cases. In both cases, the court was determining the scope of "means" language (such as "abutment means") as a matter of law. Initially, the court noted that in interpreting "means" language in a patent claim, the issue of equivalency must be addressed under "literal infringement" analysis because of 35 USC 112, which provides:

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be con-

---

[10] *Palumbo, supra.*

strued to cover the corresponding structure, material or acts described in the specification and *equivalents thereof.*" (Emphasis added.)

The test for equivalency is whether the allegedly infringing device employs substantially the same means to accomplish substantially the same result in substantially the same way.[11]

In the first case, *Hale Fire Pump Co v Tokai, Ltd,*[12] the court found that the prosecution history established that the claim involved was allowed by the United States Patent Office because the specific jackscrew mechanism of "releasable means" had an advantage in disassembling a pump absent in the prior basic design of two-part pumps. Based on this finding, the court limited the term "releasable means" to a jackscrew mechanism and held that the accused handle mechanism was not equivalent.

The second case, *DMI, Inc v Deere & Co,*[13] distinguished the *Hale Fire Pump Co* decision by noting that the claims in the *DMI* case were not allowed by the patent examiner solely because a parallelogram mechanism was used in obtaining "compensating means". The scope of the *DMI* claim was held to go beyond the specific parallelogram mechanism used by the patentee. Thus, the lower court was required to make factual findings on whether the accused machines, which used a different mechanism to obtain "compensating means", were covered by the claim.

The within case is more closely analogous to the *Hale Fire Pump Co* situation, since the patent office allowed plaintiff's patent because of the end-

[11] *Graver Tank & Mfg Co v Linde Air Products Co,* 339 US 605; 70 S Ct 854; 94 L Ed 2d 1097 (1950).

[12] 614 F2d 1278 (CCPA, 1980).

[13] 755 F2d 1572 (CA Fed, 1985).

to-end bar mechanism of "abutment means". Thus, as a matter of law, the term "abutment means" is properly interpreted as, and limited to, the end-to-end bar mechanism.

Given this interpretation of "abutment means" as a matter of law, the only question remaining is whether defendant's chain mechanism is equivalent to plaintiff's end-to-end bar mechanism. This determination is necessary since, as the trial court properly found, the chain mechanism is not literally the same as the end-to-end bar mechanism. Initially, it should be noted that the determination of equivalency is an issue of fact for the trial court.[14] However, in this case, the trial court was not required to, and properly did not, address the issue of equivalency. Based on the prosecution history of plaintiff's patent as noted above, it is clear that the doctrine of "file wrapper estoppel" applies in this case. This doctrine is stated as follows:

"[I]f, during the prosecution of a patent application, an applicant has amended the claims or has made representations or arguments limiting or narrowing the scope of the claims in order to obtain the allowance of the claims over the prior art by the patent examiner, then the applicant is estopped from subsequently trying to expand the scope of the claims beyond those amendments, representatons, or arguments."[15]

Since plaintiff had to limit its patent claims to "end-to-end bars" and "abutment means" to obtain approval, it cannot now expand the patent claims to cover "chains" and "flexible means". Plaintiff is, thus, estopped from claiming that defendant's

[14] *DMI, Inc, supra.*

[15] *Hale Fire Pump Co, supra,* p 1282; 2 Rosenberg, Patent Law Fundamentals, § 17.02(2) (Rev. 1985).

chain mechanism is equivalent to its end-to-end bar mechanism or "abutment means".

In light of this estoppel of defendant's equivalency argument, the trial court properly excluded as irrelevant testimony concerning equivalency. In summary, the trial court's interpretation of "abutment means" and "like back and forth movement" as limited to end-to-end bar mechanisms was not clearly erroneous. In addition, the trial judge was not required to address the equivalency issue under either the "literal infringement" analysis or "the doctrine of equivalents" analysis due to the doctrine of file wrapper estoppel. The trial judge properly limited his decision to a literal application of claims 13 and 31 of plaintiff's patent. Based on his proper interpretation of the terms of claims 13 and 31, he correctly concluded that defendant's accumulators were not covered by plaintiff's patent and the patent "license agreement" between the parties.

Since defendant's accumulator sales were not covered by the "license agreement", there was no breach when defendant did not pay royalties to plaintiff.

Plaintiff's claims that the trial judge, in making his decision, erroneously relied on the fact that defendant obtained patents on its accumulators, erroneously used claim 32 to limit claim 31, and erroneously took into account defendant's motives are not supported by a reading of the trial court's opinion. The trial court's judgment of no cause of action was proper.

Affirmed.